ACCEPTED
03-15-00215-CV
5182525
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/6/2015 4:45:08 PM
JEFFREY D. KYLE
CLERK

## NO. 03-15-00215-CV

### IN THE THIRD COURT OF APPEALS
### AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
5/6/2015 4:45:08 PM
JEFFREY D. KYLE
Clerk

LENNY ACEVEDO

*Appellant,*

V.

FEDERAL NATIONAL MORTGAGE ASSOCIATION

*Appellee.*

On Appeal from the County Court at Law Number Two of Travis County, Texas
Trial Court No. CC-1-CV- 15-000869, Honorable Eric Shepperd, Presiding

### RESPONSE OF FEDERAL NATIONAL MORTGAGE ASSOCIATION TO "PLAINTIFF'S ORIGINAL PETITION AND APPLICATION FOR EMERGENCY TEMPORARY RESTRAINING ORDER"

Mark D. Hopkins
Texas State Bar No. 00793975
**HOPKINS & WILLIAMS, PLLC**
12117 Bee Caves Rd., Suite 260
Austin, Texas 78738
(512) 600-4320 – Telephone
(512) 600-4326 – Facsimile
mark@hopkinswilliams.com
shelley@hopkinswilliams.com

ATTORNEYS FOR APPELLEE

May 6, 2015

## BACKGROUND FACTS AND PROCEDURAL HISTORY

**Procedural History of Eviction Proceedings.** This is an appeal by Lenny Acevedo ("Appellant" or "Acevedo") from a final judgment entered by the County Court at Law Number Two in Travis County, Texas, granting Federal National Mortgage Association ("Fannie Mae" or "Appellee") immediate possession of property located at 1108 Fox Sparrow Cove, Pflugerville, Texas 78660 (the "Property")( Appendix "A").[1] The Judgment was rendered on April 2, 2015. Appellant failed to request that the trial court set a bond. Appellant instead filed a Notice of Appeal on April 9, 2015 (Appendix "C"), a surety bond for five hundred dollars (Appendix "D"), and requested both the trial court clerk and reporter prepare their respective records without cost (despite having filed no timely Affidavit of Inability to Pay Costs). (Appendix "E" – correspondence to the clerk and court reporter). Fannie Mae is not opposed to the issuance of an appropriate bond in this case; Fannie Mae is only opposed to Appellant's litigious gamesmanship used to create delay just as was done within the prior district court litigation and appeal involving the Property. Appellant has not paid his mortgage since 2009 and has sought nothing more than the ability to live rent free for years.

---

[1] Fannie Mae purchased the Property at a foreclosure sale on April 5, 2011 (Appendix "B").

1

**Procedural History of Past District Court Litigation and Appeal**.  The Property at issue in this appeal is no stranger to the Third Court of Appeals.[2]  Two days after the foreclosure sale of the Property, Appellant executed a deed without warranty to John Rady (Appendix "F") conveying any interest owned by Appellant in the Property to Rady.  Rady then utilized the deed without warranty to file a district court lawsuit premised upon a defective notice of sale, whereby keeping Appellant in the Property throughout a lengthy district court lawsuit and appeal to this court.[3]   After years of delay, Rady dismissed his appeal voluntarily in mid 2014 and this eviction action against Acevedo followed.

---

[2] *See,* Case No. 03-12-00764-CV; *John Rady v. BAC Home Loan Servicing, LP, et al.*

[3] The appeal was brought solely for delay.  Note the delay in the request of the clerk's record and reporters record (Notice of January 29, 2013 reflecting that the records were due to be filed by December 6, 2012).  After the appellee's motion to dismiss (April 18, 2013) and the Third Court's Memorandum Opinion dismissing Rady's appeal for failure to file the records (April 19, 2013), the Third Court withdrew its Opinion on April 23, 2013, on the promise by Rady that the record would timely be procured. A year later, when the matter was taken up by submission, Rady voluntarily dismissed his appeal on June 20, 2014.  In short, Appellant Acevedo remained in possession of the Property after the April 5, 2011 foreclosure sale all the way through the June 24, 2014, dismissal of the appeal by wasting the Third Court's time with a baseless appeal that was dismissed after the maximum gain of delay had been created.  Appellant Acevedo now seeks to create the same delay at the eviction phase.

## ARGUMENT AND AUTHORITIES

Appellant's request for emergency relief filed herein: (1) fails to cite the court to the proper authority, (2) fails to attach or rely upon any evidence and, (3) fails to provide this court with any type of lower court record or transcript. It is challenging for Appellee to respond to a motion that completely fails to comply with Texas Rule of Appellate Procedure 38.1(i) in that, "the [motion] must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." T.R.A.P. 38(1)(i). As set out below, the rules regarding how and when an appellant must act in setting a supersedeas bond are straightforward.

**1. T.R.A.P. 24.2.** It is likely that Appellant's failure to cite to the appellate rules is not by accident. Texas Rule of Appellate Procedure 24.2 is very clear. It provides in part,

> (2) For recovery of property. When the judgment is for the recovery of an interest in real or personal property, **the trial court will determine** the type of security that the judgment debtor must post. The amount of security must be at least:
>
> (A) the **value of the property interest's rent or revenue**, if the property interest is real…

See, T.R.A.P. 24.2(2)(A). There has been no effort on the part of Appellant to comply with T.R.A.P. 24.1 or 24.2 regarding the suspension of enforcement of the judgment.

3

**2. T.R.C.P. 510.13.** In addition to the general requirements of T.R.A.P. 24.2 concerning proper bond amounts with respect to recovery of real property, Texas Rule of Civil Procedure 510.13 specifically addresses bond requirements following an eviction appeal in county court. Rule 510.13 provides in part,

> …The judgment of the county court may not be stayed unless within 10 days from the judgment the appellant files a supersedeas bond in an amount set by the county court pursuant to Section 24.007 of the Texas Property Code.

Tex. R. Civ. P. 510.13.

Appellant made no effort to set a hearing to determine a supersedeas bond after judgment was rendered by the county court. All that Appellant did was file a surety bond (the surety being the wife of Mr. Rady) in the amount of five hundred dollars. Fannie Mae is opposed to Ms. Rady serving as surety, and Fannie Mae is opposed to a bond amount of only $500.00 on Property valued at $123,371.70 (Appendix B– substitute trustee's deed). Appellant cannot simply lay beyond the log and fail to set a proper hearing on the amount of a bond and then proceed to file an improper and inadequate surety bond.

**3. Texas Property Code §24.007.** Texas Property Code Section 24.007 echo's Texas Rule of Civil Procedure 510.13 in providing a clear cut mechanism to supersede a county court judgment in an eviction suit. Section 24.007 provides,

> (a) A judgment of a county court in an eviction suit **may not under any circumstances be stayed pending appeal unless, within 10 days of the signing of the judgment, the appellant files a**

4

> **supersedeas bond in an amount set by the county court.** In setting the supersedeas bond the county court shall provide protection for the appellee to the same extent as in any other appeal, taking into consideration the value of rents likely to accrue during appeal, damages which may occur as a result of the stay during appeal, and other damages or amounts as the court may deem appropriate.

Tex. Prop. Code §24.007 (emp. added).

Again, Appellant made no effort to comply with Texas Property Code §24.007 in having the County Court determine the proper amount of bond to be set in this case. It is highly likely that Appellant did not request the county court to evaluate the proper amount of bond as this specific County Court, along with many other Central Texas courts, typically sets a supersedeas bond at an amount that closely approximates what the borrower's mortgage payment would be (under the theory that a mortgage payment amount would be in the same ballpark as rental income a borrower would charge a would-be tenant for the property).

Herein, the deed of trust (Appendix G) reflects Acevedo's loan amount, pre-foreclosure, to have been $151,450.00. Debt service on $151,450.00 is approximately $900.00 a month (six dollars per thousand financed – assuming interest rate of 6%). In addition to debt service, a rental rate also typically covers payment of taxes and insurance. At a 2.8 percent annual tax rate, the property taxes on a $151,000.00 property would approximate $4250.00 a year ($354.00 a month). Insurance on that value of a property would also typically run about $1500.00 a year ($125.00 a month). Give the forgoing numbers, derived from the

5

deed of trust and county records capable of judicial notice, the County Court would have likely concluded that $1,379.00 is a proper monthly bond amount to stay execution of the underlying judgment. The average eviction appeal currently takes about eight months to resolve on appeal before the Third Court of Appeals. As such, the County Court would have likely either allowed Appellant to pay $1,379.00 a month during the pendency of appeal, or the court would have set one cash bond in the amount of $11,032.00 ($1,379.00 x 8 month appeal).

4. **T.R.A.P. 24.4**. The County Court did not error in determining that Appellant failed to timely request a bond be set within ten days after judgment. As no bond was set, the County Court was correct in determining that it was without power to stay the execution of the judgment as Texas Property Code 24.007 and Texas Rule of Civil Procedure 510.13 specifically prohibit the County Court from staying the judgment. Appellant's request for extraordinary relief from this Court, on appeal, should be denied. Appellant failed to follow the express rules regarding supersedeas bonds and Appellant should not be allowed to continue to benefit (residing in the Property without cost) from his failure to follow those rules.

To the extent this Court wishes to exercise the latitude granted it under Texas Rule of Appellate Procedure 24.2(b), Fannie Mae would request an additional **cash** bond in the amount $11,032.00 be required of Appellant to be deposited with the trial court clerk pursuant to T.R.A.P. 24.2(e). In the alternative,

6

Fannie Mae requests that Appellant be required to post a monthly cash bond in the amount of $1,379.00, during the pendency of this appeal (with payment of April and May 2015 amounts due by May 15, 2015) and monthly regular monthly payments due thereafter with the monthly payment for June 2015 to be paid into the registry of the trial court by June 1, 2015.

## CONCLUSION

For the foregoing reasons, Appellee, Federal National Mortgage Company, respectfully requests that this Honorable Court deny Appellant's request for extraordinary relief. In the alternative, Appellee requests a cash bond in the amount of $11,032.00, or a monthly cash bond in the amount of $1,379.00 (with back payments for April and May due immediately) be deposited in the registry of the trial court. Appellee also requests any other relief to which it may be entitled.

Respectfully submitted,

Hopkins & Williams, PLLC
12117 Bee Caves Rd., Suite 260
Austin, Texas 78738
(512) 600-4320 – Telephone
(512) 600-4326 – Facsimile
mark@hopkinswilliams.com

By: _/s/ Mark D. Hopkins_
Mark D. Hopkins
Texas State Bar No. 00793975

ATTORNEYS FOR APPELLEE

7

## CERTIFICATE OF SERVICE

I hereby certify that the Response of Federal National Mortgage Association to "Plaintiff's Original Petition and Application for Emergency Temporary Restraining Order" for Cause No. 03-15-00215-CV has been forwarded to the following via certified mail, return receipt requested and regular U.S. mail on this 6th day of May 2015:


**Via regular U.S. mail**
**and CM/RRR# 7012 1640 0001 7114 6418**
James G. Minerve
115 Saddle Blanket Trail
Buda, Texas 78610

ATTORNEYS FOR APPELLANT


     */s/ Mark D. Hopkins*
     Mark D. Hopkins

## APPENDIX

**Exhibit "A"**:      Final Judgment dated April 2, 2015

**Exhibit "B"**:      Substitute Trustee's Deed dated Aril 5, 2011

**Exhibit "C"**:      Notice of Appeal dated April 9, 2015

**Exhibit "D"**:      Surety Bond dated April 9, 2015

**Exhibit "E"**:      Correspondence to the clerk and court reporter

**Exhibit "F"**:      Deed Without Warranty dated April 4, 2011

**Exhibit "G"**:      Deed of Trust dated October 30, 2003

# Exhibit "A"

Final Judgment
dated April 2, 2015

## CAUSE NO. C-1-CV-15-000869

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION A//K/A FANNIE MAE, *Plaintiff,* | §<br>§<br>§<br>§ | IN THE COUNTY COURT |
| V. | §<br>§ | |
| LENNY ACEVEDO AND ALL OTHER OCCUPANTS OF 1108 FOX SPARROW COVE, PFLUGERVILLE, TEXAS 78660 | §<br>§<br>§<br>§<br>§ | AT LAW NO. 2 |
| *Defendant(s).* | §<br>§ | TRAVIS COUNTY, TEXAS |

## JUDGMENT

Plaintiff, Federal National Mortgage Association a/k/a Fannie Mae ("Plaintiff"), appeared through its attorney of record. Defendants, Lenny Acevedo ("Defendant") and all other occupants of 1108 Fox Sparrow Cove, Pflugerville, Texas 78660, appeared through counsel. The Court, having reviewed the pleadings and considered the testimony, exhibits and all other relevant evidence, is of the opinion that Plaintiff is entitled to the relief sought.

**IT IS ORDERED** that Plaintiff is entitled to possession of the premises described in Plaintiff's Original Petition for Forcible Detainer, and have restitution, for which let writ issue, of the premises commonly known as 1108 Fox Sparrow Cove, Pflugerville, Texas 78660, and legally described, as:

> **LOT 1, BLOCK C, KUEMPEL TRACT PHASE 3, SECTION FIVE, AN ADDITION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE PLAT OF RECORD IN VOLUME 2002, PAGE 318, TRAVIS COUNTY, TEXAS.**

**IT IS FURTHER ORDERED** that Plaintiff have and recover from Defendants reasonable attorney's fees at the trial court level in the amount of $1,000.00, which may be collected from the bond posted by defendant, if any, payable immediately by the Clerk of the Court upon presentation of this order, together with reasonable attorney's fees if the case is

unsuccessfully appealed to the Courts of Appeal in the amount of $2,000.00, reasonable attorney's fees if the case is unsuccessfully appealed on writ of error to the Supreme Court of Texas in the amount of $3,500.00, and if writ is granted by the Supreme Court but the appeal is unsuccessful, reasonable attorney fees in the amount of $2,500.00.

**IT IS FURTHER ORDERED** that plaintiff recover from the Defendant(s) costs of court, for which let execution issue.

**ALL RELIEF NOT EXPRESSLY GRANTED HEREIN IS DENIED.**

SIGNED this ____ day of _April_____, 2015.

_____
JUDGE PRESIDING

**SUBMITTED BY:**

_____
Coury M. Jacocks
State Bar No. 24014306
15000 Surveyor Blvd., Suite 100
Addison, Texas 75001
972-340-7961 (Phone)
972-341-0734 (Fax)
Email: couryj@bdfgroup.com

ATTORNEY FOR PLAINTIFF

# Exhibit "B"

Substitute Trustee's Deed
dated April 5, 2011



TRV   2011052994
2 PGS

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

1108 FOX SPARROW COVE
PFLUGERVILLE, TX 78660
50919102
20110031401666

## SUBSTITUTE TRUSTEE'S DEED

GRANTOR(S):
  LENNY ACEVEDO

DEED OF TRUST DATE: October 30, 2003
DATE OF SALE OF PROPERTY: April 5, 2011

ORIGINAL MORTGAGEE:
  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE

TIME OF SALE: 11:18 AM/PM

PLACE OF SALE OF PROPERTY:
  THE REAR "SALLYPORT" OF THE TRAVIS COUNTY COURTHOUSE 1000 GUADALUPE STREET, AUSTIN, TEXAS 78701, OR THE PLACE DESIGNATED BY THE COUNTY COMMISSIONERS COURT

CURRENT MORTGAGEE:
  BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING LP

GRANTEE/BUYER:
  FEDERAL NATIONAL MORTGAGE ASSOCIATION, A/K/A FANNIE MAE

MORTGAGE SERVICER:
  BAC HOME LOANS SERVICING, LP

GRANTEE/BUYER'S MAILING ADDRESS:
  14221 DALLAS PARKWAY, #100
  DALLAS , TX 75254

RECORDED IN:
  CLERK'S FILE NO. 2003260223

AMOUNT OF SALE: $ 123,371.70

PROPERTY COUNTY/LEGAL DESCRIPTION: TRAVIS
LOT 1, BLOCK C, KUEMPEL TRACT PHASE 3, SECTION FIVE, AN ADDITION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE PLAT OF RECORD IN VOLUME 2002, PAGE 318, TRAVIS COUNTY, TEXAS.

Grantor conveyed the property to Trustee in trust to secure payment of the Note. Mortgagee, through the Mortgage Servicer, declared that Grantor defaulted in performing the obligations of the Deed of Trust. Current Mortgagee of the Note, through the Mortgage Servicer, accordingly has appointed Substitute Trustee and requested Substitute Trustee to enforce the trust

Notices stating the time, place and terms of sale of the property were mailed, posted and filed, as required by law. Substitute Trustee sold the property to Buyer, who was the highest bidder at the public auction, for amount of sale in the manner prescribed by law. The subject sale was conducted no earlier than 10:00AM as set forth in the Notice of Substitute Trustee's Sale and was concluded within three (3)hours of such time. All matters, duties and obligations of Mortgagee were lawfully performed.

Substitute Trustee, subject to any matters of record, and for amount of sale paid by buyer as consideration, grants, sells and conveys to Buyer, Buyer's heirs, executors, administrators, successors or assigns forever, the property together with all rights and appurtenances belonging to Grantor. Substitute Trustee hereby sells the above referenced property AS IS without any expressed or implied warranties, except as to warranties of title, and hereby conveys the property to the purchaser at the purchaser's own risk, pursuant to the terms of Texas Property Code §§ 51.002 and 51.009.

WITNESS MY HAND, this April 05, 2011.

_____ WENDY ALEXANDER
  Substitute Trustee

STATE OF TEXAS
COUNTY OF WILLIAMSON

Before me, the undersigned Notary Public, on this day personally appeared WENDY ALEXANDER as Substitute Trustee, known to me or proved to me through a valid State driver's license or other official identification described as _____, to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this April 05, 2011.

My Commission Expires:

_____

_____
Notary Public for the State of TEXAS

_____
Printed Name of Notary Public

SEAL

THERESE M. CONVERSE
MY COMMISSION EXPIRES
FEBRUARY 01, 2011

RETURN TO:
  BARRETT DAFFIN FRAPPIER
  TURNER & ENGEL, L.L.P
  15000 Surveyor Boulevard, Suite 100
  Addison, Texas 75001

  Substitute Trustee's Deed (Conventional)
  SubTrusteeDeedCounty.rpt - (06/04/2009) / Ver-19

STD20110031401666

## STATEMENT OF FACTS

1108 FOX SPARROW COVE
PFLUGERVILLE, TX 78660

BDFTE No: 20110031401666

BEFORE ME, the undersigned authority on this day personally appeared David Mulkay, known to me, who upon oath administered by me deposed and stated:

1. I am a representative of the law firm BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP in connection with the administration of foreclosure of that certain Deed of Trust or Security Instrument ("Deed of Trust") dated October 30, 2003, recorded in CLERK'S FILE NO. 2003260223, Real Property Records, TRAVIS County, TEXAS, executed by LENNY ACEVEDO ("Grantor").

2. I am making this affidavit based upon certain records maintained within the firm's files in the regular course of its business, which may include images of notices, certified mail forms, the signed Substitute Trustee's Deed, title searches, and other documents and records obtained and maintained in the usual course of business. Together with my general knowledge of mortgage servicer practices for referring foreclosure matters to the firm, the statements and information shown in these records form the basis for the following statements made in this affidavit, which to the best of my knowledge and belief are true.

3. BAC HOME LOANS SERVICING, LP is the Mortgage Servicer for the Lender or its Nominee concerning the debt evidenced by the Deed of Trust.

4. The Mortgagee, through the Mortgage Servicer declared that the Grantor defaulted in performing the obligations of the Deed of Trust and lawfully performed service of a proper notice of default and other obligations and duties of the Mortgage Servicer.

5. All notices of acceleration were served on each debtor obligated on the debt according to records obtained from the Mortgage Servicer by certified mail at the last known address of each such debtor in accordance with law. Based upon these records, each mortgagor was alive at the time of the foreclosure sale or if deceased, title was restored to the debt owner through a court judgment, or an underwriter's approval letter obtained.

6. At the instructions and on behalf of the Mortgage Servicer, Notices stating the time, place and terms of sale of the property were mailed, posted and filed in accordance with law. Notices were served on each debtor obligated on the debt according to records obtained from the Mortgage Servicer by certified mail at the last known address of each such debtor at least twenty one (21) days before the date of the sale.

7. Through my work at the firm, I know that the firm follows a regular process in foreclosure matters to ascertain a Grantor's military service status for purposes of the federal Service Member's Civil Relief Act and state law. I am familiar with this regular process, which involves submitting Grantors' names and identifying information obtained from the Mortgage Servicer or commercially available records searches to the federal Defense Manpower Data Center ("DMDC") through that agency's official internet search site (the "DMDC Site). Based upon my review of search returns obtained and maintained in the firm's files, no Grantor is reported as on active duty military service or as having concluded active duty military service within the preceding nine months.

AFFIANT: David Mulkay

STATE OF TEXAS }
COUNTY OF DALLAS }

Given under my hand and seal of office this _____ day of _____, APR 0 6 2011

Notary Seal:

Notary Public for the State of Texas

BROOKE L. EWING
Notary Public
State of Texas
My Comm. Exp. 01-28-2013

FILED AND RECORDED
OFFICIAL PUBLIC RECORDS

Apr 14, 2011 11:34 AM 2011052994
BERNSTA: $20.00
Dana DeBeauvoir, County Clerk
Travis County TEXAS

AFFIDAVIT - 1444
RETURN TO:
BARRETT DAFFIN FRAPPIER
TURNER & ENGEL, LLP
15000 Surveyor Boulevard, Suite 100
Addison, Texas 75001

Affidavit-BatchPrint.rpt - (12/30/2010) / Ver-17

STA20110031401666

Page 1455 of 1720

# Exhibit "C"

Notice of Appeal
dated April 9, 2015

## CAUSE NO. C-1-CV-15-000869

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATON A/K/A FANNIE MAE **Plaintiff** | § § § § | IN THE COUNTY COURT |
| v. | § § | AT LAW NO. 2 |
| LENNY ACEVEDO and ALL OCCUPANTS OF 1108 FOX SPARROW COVE, PFLUGERVILLE, TEXAS 78660 **Defendants.** | § § § § § | TRAVIS COUNTY, TEXAS |

### NOTICE OF APPEAL

Lenny Acevedo notices this Court of his Notice of Appeal to the 3rd Court of Appeals,

from the Judgment issued on April 2, entered in the clerk's record on April 6, 2015.

Respectfully submitted,

Lenny Acevedo

### CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the Notice of Appeal was sent on April 9, 2015 by U. S. Postal Service to:

Mark D. Hopkins
HOPKINS & WILLIAMS, PLLC
12117 Bee Caves Rd., Suite 260
Austin, Texas 78738

# Exhibit "D"

Surety Bond
dated April 9, 2015

CAUSE NO. C-1-CV-15-000869

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGAGE | § | IN THE COUNTY COURT |
| ASSOCIATION A/K/A FANNIE MAE | § | |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | AT LAW NO. 2 |
| LENNY ACEVEDO and ALL | § | |
| OCCUPANTS OF 1108 FOX SPARROW | § | |
| COVE, PFLUGERVILLE, TEXAS 78660 | § | |
| Defendants. | § | TRAVIS COUNTY, TEXAS |

KNOW ALL MEN BY THESE PRESENT,

THAT, WHEREAS, judgment was rendered on the 2ndt day of April, 2015, in the County Court of Law #2 of Travis County and State of Texas, in favor of Federal National Mortgage Association and against Lenny Acevedo and all other Occupants in Cause No. C-1-CV-15-000869 for possession, from which judgment the said, Lenny Acev edo desires to appeal to the 3rd Court of Appeals at Austin, Texas.

NOW THEREFORE, I, the said appellant Lenny Acevedo, as principal, and Susanne Rady and Guillermo Range as Sureties, acknowledge ourselves bound to pay to the Appellee Federal National Mortgage Association, the sum of $500.00, conditioned that said appellant shall prosecute his appeal to effect, and shall pay off and satisfy the judgment which may be rendered against him on said appeal.

Witness our hands this 9th day of April 9, 2015

Lenny Acevedo                                    Principal



_____
Surety

_____
Surety

The State of Texas    }
       }SS
County of Travis    }

## AFFIDAVIT OF SURETY

I, _Jeanne Baby_, do swear that I am worth, in my own right, at least the sum of $500.00, after deducting from my property all that which is exempt by the Constitution and Laws of the State from forced sale, and after the payment of all my debts, and after satisfying all encumbrances upon my property which are known to me; that I reside in _Travis_ County and have property in this State liable to execution worth said amount or more.

_____

SWORN TO AND SUBSCRIBED BEFORE ME this _9th_ day of April _9_, 2015



Notary Public of the State of Texas

The State of Texas    }
                      }SS
County of Travis      }

## AFFIDAVIT OF SURETY

I, _Guillermo Rangel_ do swear that I am worth, in my own right, at least the sum of $500.00, after deducting from my property all that which is exempt by the Constitution and Laws of the State from forced sale, and after the payment of all my debts, and after satisfying all encumbrances upon my property which are known to me; that I am a property owner in ___Travis___ County and have property in this State liable to execution worth said amount or more.



SWORN TO AND SUBSCRIBED BEFORE ME this _9th_ day of April _9th_, 2015.

Notary Public of the State of Texas

I hereby approve the foregoing Bond, this ___ day of April, 2015

_____
County Clerk


SUZANNE RADY-RANGEL
18318 HEATHER WILDE
PFLUGERVILLE TX 78660

| STATEMENT PERIOD | PAGE |
|---|---|
| FROM 01JAN15 TO 31MAR15 | 11 |

**ACCT NO:** ***9225

| TRANSACTION DATE | EACH TRANSACTION WITH A # IN THIS COLUMN IS EFFECTIVE DATED DESCRIPTION | PERIODIC INTEREST CHARGES | LATE PAYMENT CHARGES | DEBITS (-) | CREDITS (+) | NEW BALANCE |
|---|---|---|---|---|---|---|
| | PAI ISO AUSTIN TX | | | | | |
| | 000000006668 TX48036 Mar 31 @ 1:29pm | | | | | |
| | Surcharge 2.00 | | | | | |
| MAR31 | ATM TXN FEE | | | 1.50 | | 11775.95 |
| MAR31 | ATM WITHDRAWAL | | | 202.00 | | 11573.95 |
| | PAI ISO AUSTIN TX | | | | | |
| | 000000006669 TX48036 Mar 31 @ 1:29pm | | | | | |
| | Surcharge 2.00 | | | | | |
| MAR31 | ATM TXN FEE | | | 1.50 | | 11572.45 |
| MAR30# | DEBIT PURCHASE | | | 8.65 | | 11563.80 |
| # | TEXACO 0359728 Q61 PFLUGERVILLE TX | | | | | |
| # | 508900028974 12345678 Mar 30 | | | | | |
| MAR31 | DEBIT PURCHASE | | | 321.74 | | 11242.06 |
| | VZWRLSS*IVR VN 800-922-0204 NJ | | | | | |
| | 509000028975 12345678 Mar 31 | | | | | |
| MAR31 | CHARGE FEE - PAPER STATEMENT FEE | | | 2.25 | | 11239.81 |

### Cleared Share Draft Recap

| Draft # | Date | Amount | Draft # | Date | Amount | Draft # | Date | Amount |
|---|---|---|---|---|---|---|---|---|
| 1159 | MAR11 | 98.04 | *1165 | MAR16 | 190.00 | 1194 | MAR23 | 78.84 |
| 1160 | MAR05 | 155.12 | *1167 | MAR18 | 505.00 | 1195 | MAR23 | 3000.00 |
| 1161 | MAR12 | 350.00 | 1168 | MAR18 | 500.00 | 1196 | MAR30 | 1500.00 |
| *1163 | MAR13 | 100.65 | *1193 | MAR18 | 45.00 | 1197 | MAR30 | 1900.00 |

|  | Total for this period | Total year-to-date |
|---|---|---|
| Total Overdraft Fees ............... | 0.00 | 0.00 |
| Total Returned Item Fees ........... | 0.00 | 0.00 |

```
-------------------------SUMMARY----------------------

Previous Balance as of 01 MAR 15......     25527.30

Total of 12 Share Drafts for ........      8422.65 -
Total of 120 Other Debits for.......       9461.54 -
Total of 18 Deposits for ............      1493.50 +
Total of 2 Other Credits for ........      2103.20 +

Ending Balance as of 31 MAR 15.......     11239.81
```

Continued on page 12


EQUAL HOUSING LENDER
Federally Insured by NCUA

Lenny Acevedo
1108 Fox Sparrow
Pflugerville, Texas 78660
April __, 2015


Dana DeBeauvoir
Travis County Clerk
Travis County Courthouse
1000 Guadalupe Street
Austin, Texas 78701-2328

RE:     *Federal National Mortgage v. Lenny Acevedo,*
        Cause No. C-1-CV-15-000869

Dear Ms. DeBeauvoir:

This is to notice you that on this day I have appealed the Order issued in the County Court at Law #2 on ~~April 2, 2015~~.

I request a copy of the clerk's record in the above styled case, in its entirety to be sent to the 3rd Court of Appeals in conjunction with this appeal.

I am including my Affidavit of Inability to Pay for the record costs.

Sincerely,

Lenny Acevedo

# Exhibit "E"

Correspondence to the clerk
and court reporter

Lenny Acevedo
1108 Fox Sparrow
Pflugerville, Texas 78660
April __, 2015


Amanda Anderson
Court Reporter
Travis County Courthouse
1000 Guadalupe Street, Room 211
Austin, Texas 78701-2328

                RE:    *Federal National Mortgage v. Lenny Acevedo,*
                            Cause No. C-1-CV-15-000869

Dear Ms. Anderson:

This is to notice you that on this day I have appealed the Order issued in the County Court at Law #2 on April 2, 2015 .

I request a copy of the reporter's record in the above styled case, in its entirety to be sent to the 3rd Court of Appeals in conjunction with this appeal.

I am including my Affidavit of Inability to Pay for the record costs.

                        Sincerely,

                        Lenny Acevedo

Lenny Acevedo
1108 Fox Sparrow
Pflugerville, Texas 78660
April __, 2015



Dana DeBeauvoir
Travis County Clerk
Travis County Courthouse
1000 Guadalupe Street
Austin, Texas 78701-2328

               RE:    *Federal National Mortgage v. Lenny Acevedo,*
                          Cause No. C-1-CV-15-000869

Dear Ms. DeBeauvoir:

      This is to notice you that on this day I have appealed the Order issued in the County Court at Law #2 on April 2, 2015.

      I request a copy of the clerk's record in the above styled case, in its entirety to be sent to the 3rd Court of Appeals in conjunction with this appeal.

      I am including my Affidavit of Inability to Pay for the record costs.

                          Sincerely,

                          Lenny Acevedo

# Exhibit "F"

Deed Without Warranty
dated April 4, 2011

# Deed Without Warranty

**Date:**

**Grantor: Leonard Acevedo**

**Grantor's Mailing Address: 1108 Fox Sparrow Cv., Pflugerville, TX 78660**

**Grantee: John Rady**

**Grantee's Mailing Address: 13276 N. HWY 183 #204 Austin, TX 78750**

**Consideration:**

Ten and no/100 Dollars ($10.00) and other good and valuable considerations the receipt of which is hereby acknowledged.

**Property: (including any improvements): 11307 Lake Dr. Austin, TX 78748**

**Legal Description: LOT 1, BLOCK C, KUEMPEL TRACT PHASE 3, SECTION FIVE, AN ADDITION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE PLAT OF RECORD IN VOLUME 2002, PAGE 318, TRAVIS COUNTY, TEXAS**

**Reservations of Conveyance:**

NONE

**Exceptions to Conveyance:**

Subject to the easements, assessments, restrictions, mineral interests, covenants and conditions of record against the herein before described Property if, any.

**Transfer of Rights:**

Grantor, for the Consideration mentioned above and subject to the Reservations and Exceptions mentioned above, grants, sells, and conveys to Grantee the above described Property, together with all and singular any rights and appurtenances thereto in any way belonging, which Grantor has had or may have had since the beginning of time and forever to have and to hold to Grantee and Grantee's heirs, successors, and assigns forever, without express or implied warranty including warranties under common law as well as those stated in section 5.023 of the Texas Property Code (or its successor) are excluded.

## This conveyance is intended to include any property interests obtained by after-acquired title.

Exhibit

13

13  /

**This conveyance is intended to include any property interests obtained by after-acquired title.**

When the context requires, the singular nouns and pronouns include the plural.

_____     _____

THE STATE OF TEXAS

COUNTY OF WILLIAMSON

    This instrument was acknowledged before me on the 4th day of April, 2011 by Leonard Acevedo known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.



NOTARY PUBLIC OF THE STATE OF TEXAS

KEVIN BIERWIRTH
NOTARY PUBLIC
State of Texas
Comm. Exp. 09/30/2013

**AFTER RECORDING RETURN TO:**
**John Rady**
**13276 Research Blvd #204**
**Austin, TX 78750**

Exhibit

14

14

# Exhibit "G"

Deed of Trust
dated October 30, 2003

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

RETURN TO:
ALAMO TITLE COMPANY
BURNET ROAD OFFICE
THE CONTINENTAL BUILDING
9101 BURNET ROAD, SUITE 203
AUSTIN, TEXAS 78758-5254
GF# 7900377-29

TRV 2003260223
16 pgs

—————————— [Space Above This Line For Recording Data] ——————————

03-015275
[Escrow/Closing #]

00004597892810003
[Doc ID #]

# DEED OF TRUST

MIN 1000157-0003141354-1

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated OCTOBER 30, 2003 , together with all Riders to this document.
(B) "Borrower" is
LENNY ACEVEDO, A SINGLE PERSON

Borrower is the grantor under this Security Instrument.
(C) "Lender" is
AMERICA'S WHOLESALE LENDER
Lender is a CORPORATION
organized and existing under the laws of NEW YORK . Lender's address is
P.O. Box 660694, Dallas, TX 75266-0694
Lender includes any holder of the Note who is entitled to receive payments under the Note.
(D) "Trustee" is
CTC REAL ESTATE SERVICES
Trustee's address is
400 COUNTRYWIDE WAY, MSN SV-88, SIMI VALLEY, CA 93065 ,
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is a beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 1 of 12
Initials: L.A.
-6A(TX) (0005).01   CHL (12/01)(d)   VMP MORTGAGE FORMS - (800)521-7291
CONV/VA
Form 3044 1/01

*23991*

*046978928000002988A*

(F) "Note" means the promissory note signed by Borrower and dated OCTOBER 30, 2003 . The Note states that Borrower owes Lender
ONE HUNDRED FIFTY ONE THOUSAND FOUR HUNDRED FIFTY and 00/100

Dollars (U.S. $ 151,450.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than NOVEMBER 01, 2033 .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY of TRAVIS :
[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]

Initials: L.A.

-6A(TX) (0005).01    CHL (12/01)          Page 2 of 12                              Form 3044 1/01

DOC ID #: 00004597892810003

LOT 1, BLOCK C, KUEMPEL TRACT PHASE 3, SECTION FIVE, AN ADDITION IN
TRAVIS COUNTY, TEXAS, ACCORDING TO THE PLAT OF RECORD IN VOLUME 2002,
PAGE 318, TRAVIS COUNTY, TEXAS.

Parcel ID Number: 02784001340000      which currently has the address of
1108 FOX SPARROW COVE, PFLUGERVILLE
[Street/City]

Texas   78660   ("Property Address");
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

-6A(TX) (0005).01   CHL (12/01)     Page 3 of 12     Initials: L.A.   Form 3044 1/01

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which

Initials: L.A.

-6A(TX) (0005).01    CHL (12/01)                Page 4 of 12                                    Form 3044 1/01

can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

-6A(TX) (0005).01    CHL (12/01)          Page 5 of 12          Initials: L.A.          Form 3044 1/01

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Initials: L.A.

-6A(TX) (0005).01    CHL (12/01)          Page 6 of 12                    Form 3044 1/01

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has · if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

-6A(TX) (0005).01   CHL (12/01)          Page 7 of 12          Initials: _L.A._          Form 3044 1/01

Austin Data Inc.   TH   ADI11909   TR   2003260223.007

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

-6A(TX) (0005).01     CHL (12/01)                    Page 9 of 12                    Initials: _____     Form 3044 1/01

Austin Data Inc.   TH   ADI11909   TR   2003260223.008

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

-6A(TX) (0005).01   CHL (12/01)          Page 9 of 12          Initials: L. A.          Form 3044 1/01

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public venue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Austin Data Inc.   TH   ADI11909   TR   2003260223.010

56

56

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

25. **Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

26. **Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

27. **Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:**

[X] **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

[ ] **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

[ ] **Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

[ ] **Acknowledgement of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

28. **Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

L.H.

-6A(TX) (0005).01   CHL (12/01)          Page 11 of 12          Form 3044 1/01

Austin Data Inc.   TH   ADI11909   TR   2003260223.011

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
LENNY ACEVEDO                                    -Borrower

_____

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                                 -Borrower

STATE OF TEXAS
County of Travis

Before me Taresa Hale
                                            on this day personally appeared
Lenny Acevedo                                    , known to me
(or proved to me on the oath of Self        or through Drivers License        )
to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 31 st day of October 2003

(Seal)

Notary Public

TARESA HALE
Notary Public
STATE OF TEXAS
My Comm. Exp. 02-01-2005

My Commission Expires:

-6A(TX) (0005).01     CHL (12/01)          Page 12 of 12                    Form 3044 1/01

————————[Space Above This Line For Recording Data]————————

# FIXED/ADJUSTABLE RATE RIDER
### (LIBOR Twelve Month Index - Rate Caps)

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:

| | |
|---|---|
| 03-015275 | 00004597892810003 |
| [Escrow/Closing #] | [Doc ID #] |

THIS FIXED/ADJUSTABLE RATE RIDER is made this THIRTIETH          day of OCTOBER, 2003      , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to AMERICA'S WHOLESALE LENDER

("Lender") of the same date and covering the property described in the Security Instrument and located at:
1108 FOX SPARROW COVE
PFLUGERVILLE, TX 78660
[Property Address]

CONV
● ARM Fixed Period LIBOR Rider
2U852-XX (04/01)(d)                    Page 1 of 4                    Initials: L·A .





Austin Data Inc.   TH   ADI11909   TR   2003260223.013

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial fixed interest rate of 5.250 %. The Note also provides for change in the initial fixed rate to an adjustable interest rate, as follows:

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of NOVEMBER, 2008 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for twelve month U.S. dollar-denominated deposits in the London market, as published in the The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO & ONE-QUARTER percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 10.250 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.250 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

CONV
● ARM Fixed Period LIBOR Rider
2U552-XX (04/01)                    Page 2 of 4                    Initials: _L.A._

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

CONV
• ARM Fixed Period LIBOR Rider
2U652-XX (04/01)

Page 3 of 4

Initials: _____

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____(Seal)
LENNY ACEVEDO                                                    - Borrower

_____(Seal)
                                                                          - Borrower

_____(Seal)
                                                                          - Borrower

_____(Seal)
                                                                          - Borrower

CONV
● ARM Fixed Period LIBOR Rider
2U632-XX (04/01)                    Page 4 of 4                    Initials: L.A.

## FILED AND RECORDED
### OFFICIAL PUBLIC RECORDS

11-04-2003  03:48 PM 2003260223
EVANSK $44.00
DANA DEBEAUVOIR ,COUNTY CLERK
TRAVIS COUNTY, TEXAS

Austin Data Inc.   TH  ADI11909   TR   2003260223.016